FRANCISCO ROMERO                )
                                )
        Plaintiff,              )
                                )
v.                              )        Case No. 15-cv-713
                                )
MICHAEL P. ATCHISON, Warden     )        Judge Sharon Johnson Coleman
of the Illinois Department of Corrections,  )
ET AL.,                         )
                                )
        Defendants.             )
                                )

## MEMORANDUM OPINION AND ORDER

Plaintiff Francisco Romero ("Romero") filed a seven-count complaint against various employees

of the Illinois Department of Corrections ("IDOC") challenging the conditions of his confinement

in three correctional facilities under the Eighth and Fourteenth Amendments and alleging his legal

mail was read in violation of his First and Sixth Amendment rights. Defendants move to dismiss

certain defendants[1], five of the seven counts for failure to state a claim, and argue that any remaining

claims should be severed into separate suits. For the reasons stated below, the Court grants in part

and denies in part the motion.

**Background**

The following facts taken from the complaint are accepted as true for purposes of ruling on the

motion to dismiss now before the Court. On November 1, 2012, Romero was transferred from

Stateville Correctional Center ("Stateveille") to Menard Correctional Center ("Menard") and placed

in administrative detention. Dkt. 1 ¶ 8. Romero's placement in Stateville was requested by Stateville's

---

[1] Plaintiff sued thirty-two IDOC employees. Four of them, Richard Harrington, Barbara Mueller, Timothy Veath, and Counselor Hall have not yet been served and have not entered an appearance. Defendants move to dismiss seven of the twenty-eight defendants currently in this suit: Tracy Lee, Joel Shaw, Assistant Warden Tejeda, Cynthia Harris, Jerry Baldwin, Chad Brown, and Counselor Eilts.

warden, defendant Marcus Hardy, and approved by the IDOC Director, defendant Salvador Godinez. *Id.* Romero was not notified why he was being placed in administrative detention nor was he given an administrative hearing on the matter. *Id.* ¶ 9.

On December 12, 2012, members of the John Howard Association ("JHA"), an organization that monitors and reports on the conditions inside correctional facilities, visited Menard. Romero spoke with a JHA member about his placement in administrative detention and at that meeting asked Menard's Warden, defendant Michael Atchison, for a hearing on his administrative detention. Romero alleges that in response Atchison became angry, made threatening gestures towards Romero, and told Romero to "shut up." *Id.* ¶ 11. The next day a correctional officer, defendant Kevin Fedderke, gave Romero a disciplinary ticket for "insolence" and "disobeying a direct order" based on his interaction with Atchison during the JHA tour. *Id.* ¶ 12. Romero challenged the ticket and the ticket was eventually expunged. The report expunging the ticket was signed by defendants Tracey Lee and Richard Harrington. *Id.* ¶ 14. That same day, defendant Joshua Schoenbeck required Romero, against his wishes, to unseal two outgoing letters so that Schoenbeck could review them, one to the JHA member to whom Romero had spoken and one to Romero's attorney. *Id.* ¶ 36. Romero filed a grievance about the search of his legal mail, but it was dismissed. *Id.* ¶ 37. At some point defendant Barbara Mueller told Romero that he would be disobeying a direct order if he sealed his outgoing legal mail. *Id.* ¶ 38.

Romero remained in administrative detention at Menard until he was transferred back to Stateville on November 12, 2013. *Id.* ¶ 16-18. While in administrative detention at Menard, Romero's cell had no heat in the winter, and his windows did not fully close. *Id.* ¶ 42. During the summer, Romero alleges his cell was unbearably hot. *Id.* ¶ 43. Other housing units were provided fans and ice water twice daily to help deal with the heat, but prisoners in administrative detention were not provided those accommodations. *Id.*

2

Romero remained in administrative detention when he was transferred back to Stateville in November 2013. Defendant Joel Shaw told Romero he was in administrative detention because of the December 2012 ticket. *Id.* ¶ 18. In January 2014, defendant Cynthia Harris gave Romero an orientation manual for his housing unit which stated that a minimum of nine months in administrative detention was required. *Id.* ¶ 19. Romero filed a grievance with an assistant warden, defendant Tejeda[2], regarding the nine-month-minimum policy. *Id.* ¶ 20. In February 2014, Romero spoke to a counselor supervisor, defendant Jerry Baldwin, about the lack of response to his grievance, but Baldwin took no action in response to Romero's complaint. *Id.* ¶ 22. While in administrative detention at Stateville, the toilets in Romero's cell were often backed up. *Id.* ¶ 49. His cell was routinely flooded with urine and feces. *Id.* During the winter, Romero's cell was cold enough that Romero could see his own breath. *Id* ¶ 55.

On April 2, 2014, Romero was transferred to Pontiac Correctional Center ("Pontiac"). *Id.* ¶ 24. The next month, a counselor at Pontiac, defendant Eilts, told Romero that he had received Romero's grievance about his administrative detention and had ripped it in half. *Id.* ¶ 26. On August 12, 2014, Plaintiff had a hearing about his administrative detention before a committee comprised of defendants Pierce, Koechel, Posey, Jennings, and Chad Brown. *Id.* ¶ 30. Six days later, Romero was informed that the committee recommended that Romero remain in administrative detention. *Id.* ¶ 31. While in administrative detention at Pontiac, Romero's cell was infested with ants, mice, and bugs. *Id.* ¶ 57. Romero continued to remain in administrative detention up until the filing of his complaint, *id.* ¶ 35, and the Court has received no indication of any change to his confinement.

---

[2] Plaintiff has not named defendant Tejeda by first name, only by his position, assistant warden. Plaintiff also did not provide first names for defendants Hasenmeyer, Hughes, Cowan, Hall, Pierce, Posey, Koechel, Snyder, Jennings, Starkey, Eilts, and Trancoso.

**Legal Standard**

A complaint will survive a motion to dismiss under Rule 12(b)(6) if its well-pleaded facts when accepted as true and viewed in the light most favorable to the plaintiff state a plausible claim for which relief can be granted. *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). A plaintiff may only bring different claims against different defendants in a single suit if the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20. An official is not a proper defendant in a suit alleging constitutional violations unless that official caused or participated in the violation. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). An official who fails to prevent or remedy a constitutional violation he knows is occurring can be found to have caused or participated in the violation. *Id.* ("A guard who stands and watches while another guard beats a prisoner violates the Constitution . . .").

**Discussion**

*Prolonged Administrative Detention*

Defendants move to dismiss Romero's due process claim because they assert "inmates do not have any due process rights associated with administrative detention." Dkt. 38 at 6. But the Seventh Circuit has held that an inmate's liberty interest is affected whenever he is placed "in conditions more restrictive than those in the general population" if the conditions "are particularly harsh" or if the inmate is subject to those conditions "for a significantly long time." *Earl v. Racine Cty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013). In *Marion v. Columbia Correction Inst.* the Seventh Circuit reversed the dismissal of an inmate's due process claim where the inmate had been segregated for 240 days, finding that he should be permitted to develop a factual record regarding the specific conditions of the segregated confinement. 559 F.3d 693, 698 (7th Cir. 2009). Romero alleges he has been in administrative detention continuously since November 1, 2012. If that allegation is true, when Romero filed his complaint in this suit he had been in segregated confinement for 813 days. As was

the case in *Marion*, the alleged length of his segregated confinement alone makes his due process claim sufficient to survive a motion to dismiss.

*Conditions of Confinement*

Defendants argue that the prison conditions described by Romero in his complaint are not sufficiently severe enough to violate the Eighth Amendment. The Eighth Amendment prohibits denials of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The basic life necessities of which prisoners cannot be deprived include adequate shelter, heat, and sanitation. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006).

When an inmate alleges he was subject to extreme temperatures and was denied reasonable means of protecting himself from the risk of harm caused by those extreme temperatures, he has stated an Eighth Amendment claim. *See White v. Monohan,* 326 F. App'x 385, 387 (7th Cir. 2009) (collecting cases). Likewise, unhygienic conditions combined with a denial of cleaning supplies can violate the Eighth Amendment. *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013). In particular, exposure to human waste, even for as little as three days, is constitutionally impermissible. *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007).

Romero contends that at Menard and Stateville he was deprived of adequate protection from extreme cold and heat. Dkt. 1 ¶¶42-43, 55. He also claims that his cell at Stateville, where he was incarcerated for almost five months, routinely flooded with human fecal matter. *Id.* ¶ 49. These allegations are sufficient to support an Eighth Amendment claim. However, Romero's claims regarding Pontiac fall short. Although Romero complains of pest infestation, he does not provide sufficient detail to allow this Court to infer that the infestation rose to the level of an Eighth Amendment violation. *See, e.g., Smith v. Dart,* 803 F.3d 304, 312 (7th Cir. 2015) ("[W]e are left in the dark as to how extensive the infestations are and how the pests affect him.") Accordingly, Count 4 of Romero's complaint is dismissed.

*Search of Legal Mail*

Defendants move to dismiss Romero's claim regarding the search of his legal mail on the basis that only *routine* opening and reading of legal mail is actionable, and here Romero has complained of just a single occasion on which his legal mail was read. Romero counters that his allegation that the he was told he could not seal his outgoing legal mail supports an inference that his legal mail was being read routinely. This Court agrees. Romero's claim regarding the search of his legal mail may go forward.

*Personal Involvement of Defendants*

Defendants Lee, Shaw, Tejeda, Harris, Baldwin, Brown, and Eilts maintain that Romero failed to plead their personal participation in the alleged unconstitutional deprivations. Instead, they argue, Romero has simply alleged that these defendants mishandled Romero's grievances, which cannot form the basis of a constitutional claim.

Defendants misapprehend the significance of Romero's allegations. The failure to respond to Romero's grievances does not *by itself* violate the Constitution, but it establishes that the officials were made aware of the conditions of Romero's confinement and failed to intervene to remedy them. Where a grievance filed by Romero raised a constitutional concern, the officials that disregarded those grievances are akin to the guard who violates the constitution because he "stands and watches while another guard beats a prisoner." *George,* 507 F.3d at 609. If Romero's allegations are proven true, defendants Tejeda, Baldwin, Brown and Eilts are such officials. Tejeda received Romero's grievance about the nine-month-minimum administrative detention policy. Dkt. 1 ¶ 20. This provided Tejeda with enough information to question whether Romero was being afforded adequate due process, but Tejeda took no action. Baldwin was made aware of Romero's prolonged administrative detention on February 6, 2014, when Romero had been segregated for 462 days, but Baldwin took no action. *Id.,* ¶ 22. Brown reviewed Romero's administrative detention on August 18,

2014, when Romero had been segregated for 655 days, and Brown recommended that Romero continue to be segregated. *Id.* ¶ 30-31. Eilts received a grievance from Romero in May 2014 about the conditions of Romero's administrative detention, and rather than move the grievance through the administrative process, Eilts disposed of the grievance by ripping it up. *Id.* ¶ 26-27. If Romero's prolonged administrative detention violated his due process rights, then these officials' failure to act when made aware of his administrative detention caused the violation of Romero's rights to continue.

However, Romero's allegations regarding Lee, Shaw and Harris are insufficient. Romero's sole allegation against Lee is that he signed the report which expunged Romero's ticket. Dkt. 1 ¶ 14. Romero does not then allege that Lee knew other officials relied on the expunged ticket to justify Romero's continued administrative detention. Similarly, Romero alleges that Shaw informed Romero he was in administrative detention because of the December 2012 ticket. *Id.* ¶ 18. Romero does not allege that Shaw knew the ticket had been expunged, and therefore had reason to question if Romero was being afforded due process. With respect to Harris, Romero only alleges that he gave Romero the manual that contained the nine-month-minimum policy. Dkt. 1 ¶19. Romero does not allege that Harris knew what the manual said. Nor does Romero allege that Harris knew Romero in particular was being held in prolonged administrative detention without review. Therefore Defendants Lee, Shaw, and Harris are dismissed from this action.

*Severability of Claims*

Defendants argue that Romero's claims should be severed into separate suits. In particular, they maintain that the claims against officials from each correctional facility are legally and factually distinct. According to Romero, the claim that binds the defendants together is his due process claim regarding his prolonged administrative detention. Romero argues his placement in administrative detention was a "continuing process, not separate placements at different facilities." Dkt. 40 at 5.

Pursuant to Rule 20, different claims against different defendants can be joined in a single suit if the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20. Because the purpose of joinder is to promote judicial efficiency, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). The Seventh Circuit has not set out a test for determining whether events form part of the same transaction, occurrence, or series thereof for purposes of Rule 20. But with respect to compulsory counterclaims under Rule 13, the Seventh Circuit has adopted the "logical relationship test" which dictates that when courts determine if claims arise out of the same transaction or occurrence, they should consider "the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Bd. Of Regents of Univ. Of Wisconsin Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 470 (7th Cir. 2011).

The Court sees no reason here to sever Romero's claims into separate suits. Defendants have not identified any unfairness to which they will be subjected if the claims are dispensed with in a single suit. Furthermore, the allegations in Romero's complaint support the inference that his administrative detention in Menard, Stateville, and Pontiac was all part of one continuous transaction. Romero alleges he has been in administrative detention continuously since November 2012. Additionally, Romero alleges that when he was transferred from Menard back to Stateville, he was told he was being held in administrative detention because of a ticket he had received at Menard. Dkt. 1 ¶ 18. These allegations indicate that the decision to hold Romero in administrative detention was not made independently at each facility, but rather collaboratively across facilities. While the relationship between the conditions of Romero's confinement and the search of his legal mail is more tenuous, the defendants against which the legal mail claim is brought are all also defendants in Romero's due process claim. Under Rule 18(a), "a plaintiff may put in one complaint

every claim of any kind against a single defendant." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012); Fed. R. Civ. P. 18. Thus resolution of the legal mail claim in the same suit as the due process claim is appropriate.

*Conspiracy Claims*

In the preliminary statement of the complaint, Romero alleges he seeks relief under 42 U.S.C. §1983 and 1985 (3). Section 1985 creates a private right of action against persons who conspire to deprive others of their rights under federal law. 42 U.S.C. § 1985. Defendants argue that no claim for conspiracy has been properly pled and that a conspiracy claim is barred by the intercorporate conspiracy doctrine. Romero does not oppose the dismissal of his conspiracy claims. Accordingly Romero's conspiracy claims are dismissed.

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Romero's conspiracy claims are dismissed with prejudice, as is Count 4. Defendants Lee, Shaw, and Harris are also dismissed from the suit. Defendants' motion to dismiss is denied with respect to the remaining claims against the remaining defendants.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: November 30, 2015