IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Francisco Romero, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 15-cv-00713 |
| | ) |
| Michael Atchison *et al.*, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

Pursuant to Local Rule 56.1(a)(3) and in support of Plaintiff's Motion for Partial Summary Judgment (ECF 284), Plaintiff submits the following statement of undisputed material facts, which entitle Plaintiff to judgment as a matter of law.

**LIST OF EXHIBITS**

**Exhibit 1.** Francisco Romero cell assignment table. **[FILED UNDER SEAL]**

**Exhibit 2.** Defendants' Local Rule 56.1 Statement of Undisputed Facts (ECF 148) (Oct. 27, 2017)

**Exhibit 3.** June 15, 2017 Order (ECF 130) **[FILED UNDER SEAL]**

**Exhibit 4.** Affidavit of Wm. Spiller (and attachments) **[FILED UNDER SEAL]**

**Exhibit 5.** April 23, 2019 Deposition of Michael P. Atchison

**Exhibit 6.** IDOC Administrative Directive 05.12.101 - Administrative Detention Placement

**Exhibit 7.** Affidavit of Terri Kennedy (and attachments) **[FILED UNDER SEAL]**

**Exhibit 8.** Affidavit of Latoya Marks (and attachments) **[FILED UNDER SEAL]**

**Exhibit 9.** June 21, 2017 Deposition of Michael P. Atchison

**Exhibit 10.** Menard CC cell housing table for Francisco Romero

**Exhibit 11.** Stateville CC cell housing table for Francisco Romero

**Exhibit 12.** IDOC Living Unit History Associated View for Francisco Romero [**FILED UNDER SEAL**]

**Exhibit 13.** Security Reclassification Review [**FILED UNDER SEAL**]

### STATEMENT OF FACTS

1. Plaintiff is a prisoner in the Illinois Department of Corrections ("IDOC"), where he has been incarcerated since 2006. (Ex. 1.)

2. From his entry into the IDOC in 2006 until 2012, Plaintiff was generally housed in the general population in the IDOC facilities in which he was placed. (*Id.*)

3. Prisoners in the IDOC's general population receive at least five hours of yard time per week, five visits per month, access to religious services according to availability, and can make phone calls whenever they have access to a phone, typically during yard time, all of which is done in a general population setting. (Ex. 2 ¶¶ 15-17.)

4. The IDOC's "intelligence file" on Plaintiff contains an assertion (or a document asserting) from October 2012 asserting that a confidential source told IDOC personnel that Plaintiff was the member of a gang and that in connection with his gang affiliation (the IDOC refers to a gangs as a "security threat group," or "STG") he was threatening to assault prison staff.[1] (ECF 130, Ex. 3)

5. As of October 2012, Plaintiff was incarcerated in the general population of Stateville Correctional Center ("Stateville CC"). (Ex. 1)

---

[1] The IDOC maintains "intelligence files" on prisoners that it houses. During the course of discovery in this case, Plaintiffs sought production of the IDOC's intelligence file on him. (*See* ECF 88.) Because of security concerns the Court denied that motion (*See* ECF 98.) Instead, however, the Court conducted an *in camera* review of the intelligence file, and then entered a summary of that file in the record. (*See* ECF 130.) Plaintiff's citations to the Court's in camera review (*i.e.*, ECF 130) are citations to this summary. (The Court's in-camera review was later placed under seal, *see* ECF 133, and Plaintiff therefore files ECF 130 under seal.)

2

6.    On November 1, 2012, Plaintiff was transferred from Stateville CC to Menard Correctional Center ("Menard CC") to be placed in Administrative Detention ("AD"). (Ex. 4 at IDOC 000386.). The stated reason for his placement in AD was that Plaintiff was the member of an STG and had threatened to assault staff. (Ex. 4 at IDOC 007749; Ex. 5 at 15-16.)

7.    AD is "a non-disciplinary status of confinement that removes an offender from general population or restricts the individual's access to general population." (Ex. 6 § II(E)).

8.    AD consists of three phases consisting of various restrictions to an inmate's privileges. (Ex.6 § II(G)((1).)

9.    AD directives require that an inmate's status in AD reviewed by a committee every 90 days to determine whether his continued placement in AD is warranted. (Ex. 2 ¶ 7; Ex. 6 § II(*I*)(5).)

10.   Menard CC, Stateville CC, and Pontiac CC maintain AD files on inmates housed at their facilities. (Ex. 7; Ex. 4; Ex. 8; Ex. 9 at 53-54).

11.   On June 23, 2017, Teri Kennedy, the Assistant Warden of Operations a Pontiac Correctional Center signed an affidavit swearing that "a true copy of the entire Administrative Detention file maintained at Pontiac [Correctional Center] for Francisco Romero" had been produced to Plaintiff in this case. (Ex. 7.)

12.   On June 29, 2017, William Spiller, a Sergeant at Menard Correctional Center, signed an affidavit swearing that "a true copy of the Administrative Detention documents maintained at Menard [Correctional Center] for Francisco Romero" had been produced to Plaintiff. (Ex. 4.)

13.   On June 26, 2017, Latoya Marks, Executive Assistant to the Warden at Stateville Correctional Center, signed an affidavit swearing that "a true copy of the Administrative

3

Detention documents maintained at Stateville [Correctional Center]" for Plaintiff had been produced to Plaintiff. (Ex. 8.)

14. Plaintiff was held in AD for a total of 1295 days. (Ex. 4 at IDOC 000386; Ex. 7 at IDOC 007748.). Of the 1295 days Plaintiff was held in AD, he spent 1284 day without a cellmate. (Ex. 10; Ex. 11.).

15. When Plaintiff was first placed in AD, on November 1, 2012, he was housed in the B-wing of the North II annex at Menard CC. (Bates 7650). (Ex. 12.)

16. As of November 1, 2012, Plaintiff's placement in AD was "Phase I". (Ex. 4 at IDOC 000386; -390.)

17. In Phase I of AD, Plaintiff "was given yard time twice a week, was allowed one 15-minute phone call per month, was able to meet with visitors twice a month, and was allowed to shower twice a week." (Ex. 2 ¶ 8.)

18. Documents in the IDOC's intelligence file on Plaintiff state that in December 2012, a "confidential source" told IDOC personnel that Plaintiff was threatening to assault staff. (Ex. 3.)

19. Between December 2012 and May 2015, the IDOC's intelligence file has no entries of information reflecting claims that Plaintiff engaged in or threatened misconduct. (Ex. 3.)

**February 1, 2013 Review**.

20. The first documentation of any review of plaintiff's status in AD is from February 1, 2013. (Ex. 4 at IDOC 000386.) However:

> a. Plaintiff did not receive notice of this review 24 hours prior to the review, or at any time prior to the review. (Ex. 9 at 30-32.)

    b. Plaintiff was not permitted to appear in person for this review. (*Id.*)

    c. Plaintiff had no opportunity to contest his AD placement in writing for this review. (*Id.*)

    d. Plaintiff was not afforded the right to call witnesses or present other evidence at this review. (*Id.*)

    e. After this review, Plaintiff never received a statement of the reasons for his continued placement in AD. (*Id.*)

21. After the February 1, 2013 review, Plaintiff remained in AD on Phase I. (Ex. 4 at IDOC 000390.)

**April 11, 2013 Review**.

22. There are documents indicating that on April 11, 2013, Plaintiff's placement in AD was reviewed. (Ex. 4 at IDOC 000390.) However:

    a. Plaintiff did not receive notice of this review 24 hours prior to the review, or at any time prior to the review. (Ex. 9 at 30-32.)

    b. Plaintiff was not permitted to appear in person for this review. (*Id.*)

    c. Plaintiff was not afforded the right to call witnesses or present other evidence at this review. (*Id.*)

    d. Plaintiff had no opportunity to contest his AD placement in writing for this review. (*Id.*)

    e. After this review, Plaintiff never received a statement of the reasons for his continued placement in AD. (*Id.*)

23. The document memorializing the April 11, 2013 review is a form that calls for notation of any STG activity. No STG activity is noted on the form. (Ex. 4 at IDOC 000390.)

24. After the April 11, 2013 review, Plaintiff remained in AD. (Ex. 4 at IDOC 000390.)

25. As a result of the April 11, 2013 review, Plaintiff's status on AD was changed from Phase I AD to Phase II AD. (Ex. 4 at IDOC 000390.)

26. Phase II of AD consisted of the following changes to the restrictions imposed by Phase I of AD: Plaintiff "went to yard twice a week with other inmates, was allowed two 15-minute phone calls and three visitors per month, and was allowed to shower three times a week. (Ex. 2 ¶ 9.)

**May 1, 2013 Review**.

27. There are documents indicating that on May 1, 2013, Plaintiff's placement in AD was reviewed. (Ex. 4 at IDOC 000389.) However:

   a. Plaintiff did not receive notice of this review 24 hours prior to the review, or at any time prior to the review. (Ex. 9 at 30-31.)

   b. Plaintiff was not permitted to appear in person for this review. (*Id.*)

   c. Plaintiff was not afforded the right to call witnesses or present other evidence at this review. (*Id.*)

   d. Plaintiff had no opportunity to contest his AD placement in writing for this review. (*Id.*)

   e. After this review, Plaintiff never received a statement of the reasons for his continued placement in AD. (*Id.*)

28. The document memorializing the May 1, 2013, review is a form that calls for notation of any STG activity. No STG activity is noted on the form. (Ex. 4 at IDOC 000389)

29. After the May 1, 2013 review, Plaintiff remained in AD. (*Id.*)

30. As a result of the May 1, 2013 review, Plaintiff's status on AD was changed from Phase II AD to Phase III AD. (*Id.*)

31. Phase III of AD consisted of the following changes to the restrictions imposed by Phase II of AD: Plaintiff "was allowed five visits per month and three showers per week." (EX. 2 ¶ 10.)

**August 1, 2013 Review.**

32. There are documents indicating that on August 1, 2013, Plaintiff's placement in AD was reviewed. (Ex. 4 at IDOC 000388.) However:

    a. Plaintiff did not receive notice of this review 24 hours prior to the review, or at any time prior to the review. (Ex. 9 at 30-31.)

    b. Plaintiff was not permitted to appear in person for this review. (*Id.*)

    c. Plaintiff was not afforded the right to call witnesses or present other evidence at this review. (*Id.*)

    d. Plaintiff had no opportunity to contest his AD placement in writing for this review. (*Id.*)

    e. After this review, Plaintiff never received a statement of the reasons for his continued placement in AD. (*Id.*)

33. The document memorializing the August 1, 2013, review is a form that calls for notation of any STG activity. No STG activity is noted on the form. (Ex. 4 at IDOC 000388.)

34. After the August 1, 2013 review, Plaintiff remained in AD. (Ex. 4 at IDOC 000388.)

**November 1, 2013 Review.**

35. There are documents indicating that on November 1, 2013, Plaintiff's placement in AD was reviewed. (Ex. 4 at IDOC 000387.) However:

   a. Plaintiff did not receive notice of this review 24 hours prior to the review, or at any time prior to the review. (Ex. 9 at 30-31.)

   b. Plaintiff was not permitted to appear in person for this review. (*Id.*)

   c. Plaintiff was not afforded the right to call witnesses or present other evidence at this review. (*Id.*)

   d. Plaintiff had no opportunity to contest his AD placement in writing for this review. (*Id.*)

   e. After this review, Plaintiff never received a statement of the reasons for his continued placement in AD. (*Id.*)

36. The document memorializing the November 1, 2013 review is a form that calls for notation of any STG activity. No STG activity is noted on the form. (Ex. 4 at IDOC 000387.)

37. After the November 1, 2013 review, Plaintiff remained in AD. (Ex. 4 at IDOC 000387.)

38. On or about November 12, 2013, Plaintiff was transferred from Menard CC to Stateville CC. (Ex. 1 at IDOC 000392.)

39. Upon his arrival at Stateville CC Plaintiff remained in AD. (Ex. 1 at IDOC 000392.)

**February 13, 2014 Review.**

40. There are documents indicating that on February 13, 2014, Plaintiff's placement in AD was reviewed. (Ex. 8 at IDOC 007651.) However:

   a. Plaintiff did not receive notice of this review 24 hours prior to the review, or at any time prior to the review. (Ex. 9 at 30-31.)

   b. Plaintiff was not permitted to appear in person for this review. (*Id.*)

   c. Plaintiff was not afforded the right to call witnesses or present other evidence at this review. (*Id.*) Plaintiff had no opportunity to contest his AD placement in writing for this review. (*Id.*)

41. After the February 13, 2014 review, Plaintiff remained in AD. (Ex. 8 at IDOC 007651.)

42. On or about April 2, 2014, Plaintiff was transferred from Stateville CC to Pontiac Correctional Center ("Pontiac CC"). (Ex. 1 at IDOC 000392.)

43. Upon his arrival at Pontiac CC Plaintiff remained on AD. (Ex. 1 at IDOC 000392.)

44. On May 1, 2014, the IDOC issued a directive requiring that prisoners in AD be provided with written notice of the reviews of their confinement in AD. (Ex. 6 at IDOC 007730.) The directive also required IDOC take minutes from each review. (*Id.* at -7731.).

**May 12, 2014 Review.**

45. There are documents indicating that on May 12, 2014, Plaintiff's placement in AD may have been reviewed. (Ex. 6 at IDOC 007561.) If this review occurred:

   a. Plaintiff did not receive notice of this review 24 hours prior to the review, or at any time prior to the review. (Ex. 9 at 30-31.)

9

  b. Plaintiff was not permitted to appear in person for this review. (*Id.*)

  c. Plaintiff was not afforded the right to call witnesses or present other evidence at this review. (*Id.*)

  d. Plaintiff had no opportunity to contest his AD placement in writing for this review. (*Id.*)

  e. After this review, Plaintiff never received a statement of the reasons for his continued placement in AD. (*Id.*)

46. After the May 12, 2014 review, Plaintiff remained in AD. (Ex. 6.)

47. Until the May 2014 directive was issued, notices of hearing were not provided to prisoners confined to AD. (Ex. 5 at 62-64; Ex. 9 at 30.)

**August 12, 2014 Review.**

48. On August 3, 2014, Plaintiff received notice that his status in AD would be reviewed at a hearing. (Ex. 7 at IDOC 000075.) This was the first notice Plaintiff had received of a review of his placement in AD since being placed in AD on November 1, 2012, one year, nine months, and two days (640 days) before.

49. The August 3 notice gave the following basis for Plaintiff's confinement in AD:

> Due to offender Romero's active involvement with the Latin Saints STG and recent intelligence indicating that offender Romero plans to retaliate against staff for assaulting a fellow member of the Latin Saint STG offender Romero has been placed in Administrative Detention for the safety and security of the Department.

(Ex. 7 at IDOC 000075.) The only intelligence documentation in the IDOC's intelligence file on Plaintiff that provided the basis for this notice was the December 2012 intelligence report. (Ex. 3.) Besides the December 2012 intelligence report, there are no other documents indicating Plaintiff's involvement in STG activity or other misconduct since December 2012.

50. On August 12, 2014, a review hearing was held regarding Plaintiff's placement in AD. Plaintiff was present. This was the first time Plaintiff was allowed the option of being present to participate in a review of his placement in AD. (Ex. 7 at IDOC 002261.)

51. At the August 12, 2014 review hearing, Plaintiff was given the option to speak and/or he was allowed to submit a written statement. (Ex. 7 at IDOC 002261.)

52. After the August 12, 2014 review, Plaintiff continued to be confined to AD. (Ex. 7 at IDOC 002261.)

**November 13, 2014 Review.**

53. On or about November 6, 2014, Plaintiff received notice that his status in AD would be reviewed at a hearing. The notice provided the basis for Plaintiff's continued confinement to AD. The provided basis for detention was verbatim of the basis provided in the August 3, 2014 notice. (Ex. 7 at IDOC 000076.)

54. There was no information in the IDOC's intelligence file intelligence file since December 2012 reflecting any of the information in the November 6, 2014 notice. (Ex. 3.)

55. On or about November 13, 2014, a review hearing was held regarding Plaintiff's placement in AD. Plaintiff was present. At the review hearing, Plaintiff was allowed to speak, and he was allowed to submit a written statement. (Ex. 7 at IDOC 002254.)

56. After the November 13, 2014 review, Plaintiff remained on AD. (Ex. 7 at IDOC 002254.)

**February 10, 2015 Review.**

57. On January 28, 2015, Plaintiff received notice that his status in AD would be reviewed at a hearing. (Ex. 7 at IDOC 000072.) The notice provided the basis for Plaintiff's

11

continued confinement to AD. The basis was verbatim of the basis provided in the August 3, 2014 and November 6, 2014 notice. (Ex. 7 at IDOC 000072.)

58. There was no information in the IDOC's intelligence file since December 2012 reflecting any of the information in the January 28, 2015 notice. (Ex. 3.)

59. On February 10, 2015, a review hearing was held regarding Plaintiff's placement in AD. (Ex. 7 at IDOC 002254.) At the review hearing, Plaintiff provided a written statement; there is no indicate if he made an oral statement. (Ex. 7 at IDOC 002254; 2257-2258.)

60. After the February 10, 2015 review, Plaintiff remained on AD. (Ex. 7 at IDOC 002254.)

**May 13, 2015 Review.**

61. On May 5, 2015, Plaintiff received notice that his status in AD would be reviewed at a hearing. The notice provided the basis for Plaintiff's continued confinement to AD. The basis was verbatim of the basis provided in the August 3, 2014, November 6, 2014, and January 28, 2015 notice. (Ex. 7 at IDOC 002249.)

62. There was no information in the IDOC's intelligence file since December 2012 reflecting any of the information in the May 5, 2015 notice. The court's review does indicate that on some undetermined date in May 2015, an informant told IDOC personnel that Romero was the leader of an STG (Ex. 3), but that new information was not reflected in the May 5 notice.

63. On May 13, 2015, a review hearing was held regarding Plaintiff's placement in AD. Plaintiff was present. (Ex. 7 at IDOC 002247.) The documentation from Plaintiff's hearing does not indicate if Romero provided a written or oral statement. (*Id.*)

64. After the May 13, 2015 review, Plaintiff remained on AD. (Ex. 7 at IDOC 002247.)

**August 27, 2015 Review.**

65. On August 20, 2015, Plaintiff received notice that his status in AD would be reviewed at a hearing. The notice provided the basis for Plaintiff's continued confinement to AD. The basis was verbatim of the basis provided in the August 3, 2014, November 6, 2014, January 28, 2015 and May 5, 2015 notice. (Ex. 7 at IDOC 002241-42.)

66. There was no information in the IDOC's intelligence file since October 2012 reflecting any of the information in the August 20, 2015 notice. The IDOC'S intelligence file contained an entry in July 2015 stating that a confidential source had claimed that Romero had "put a hit" on another inmate, but this information was not reflected in the August 20, 2015 notice. (Ex. 3.)

67. On August 27, 2015, a review hearing was held regarding Plaintiff's placement in AD. Plaintiff was present. At the review hearing, Plaintiff was allowed to speak, and he was allowed to submit a written statement. ((Ex. 7 at IDOC 002240.)

68. After the August 27, 2015 review, Plaintiff remained on AD. (*Id.*)

**November 25, 2015 Review.**

69. On November 18, 2015, Plaintiff received notice that his status in AD would be reviewed at a hearing. The notice provided the basis for Plaintiff's continued confinement to AD. The basis was verbatim of the basis provided in the August 3, 2014 November 6, 2014, January 28, 2015, May 5, 2015, and August 20, 2015 notice. ((Ex. 7 at IDOC 002234-35.)

70. There was no information in the IDOC's intelligence file since October 2012 reflecting any of the information in the November 18, 2015 notice. (Ex. 3.)

71. On November 25, 2015, a review hearing was held regarding Plaintiff's placement in AD. (Ex. 7 at IDOC 002233.) Plaintiff did not waive his appearance at this hearing. ((Ex. 7 at IDOC 002234-35.)

72. After the November 25, 2015 review, Plaintiff remained on AD. (Ex. 7 at IDOC 002233.)

**February 17, 2016 Review.**

73. On February 11, 2016, Plaintiff received notice that his status in AD would be reviewed at a hearing. The notice provided the basis for Plaintiff's continued confinement to AD. The basis was verbatim of the basis provided in the August 3, 2014, November 6, 2014, January 28, 2015, May 5, 2015, August 20, 2015, and November 18, 2015 notices. (Bates 2228-29.)

74. There was no information in the IDOC'S intelligence file since October 2012 reflecting any of the information in the February 11, 2016 notice. (Ex. 3.)

75. On February 17, 2016, a review hearing was held regarding Plaintiff's placement in AD. Plaintiff was present. At the review hearing, Plaintiff was allowed to speak, and he was allowed to submit a written statement. (Ex. 7 at IDOC 002227.)

76. After the February 11, 2016 review, Plaintiff remained on AD. (Ex. 7 at IDOC 002227.)

**May 19, 2016 Review.**

77. On May 12, 2016, Plaintiff received notice that his status in AD would be reviewed at a hearing. The notice provided the basis for Plaintiff's continued confinement to AD. The basis was verbatim of the basis provided in the February 11, 2016, August 3, 2014,

14

November 6, 2014, January 28, 2015, May 5, 2015, August 20, 2015, and November 18, 2015 notices described above. (Ex. 7 at IDOC 002223-24.)

78. There was no information in the IDOC's intelligence file since October 2012 reflecting any of the information in the May 12, 2016 notice. (Ex. 3.)

79. On May 19, 2016, a review hearing was held regarding Plaintiff's placement in AD. (Ex. 7 at IDOC 00222.)

80. After the May 19, 2016 review, Plaintiff was released from AD into the general population. Plaintiff had spent more than three and a half years in solitary confinement. (Ex. 7 at IDOC 002222; 7746-48.)

Date: October 2, 2020

Respectfully submitted,

/s/ *Stephen H. Weil*

Stephen H. Weil – weil@loevy.com
Jon Loevy – jon@loevy.com
Loevy & Loevy
311 N. Aberdeen Street
Third Floor
Chicago, IL 60607
312-243-5900

Jennifer Blagg
jennifer.blagg@yahoo.com
Attorney for Plaintiff
1333 West Devon Ave, Suite 267
Chicago Il, 60660
(773) 859-0081

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 2, 2020, a true and correct copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Stephen H. Weil