# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISVISION

| | | |
|---|---|---|
| FRANCISCO ROMERO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 713 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL P. ATCHISON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

The Defendants, GUY PIERCE, SR., RANDY PFISTER, VICTOR TRANCOSO, MICHAEL MAGANA, MARCUS HARDY, MICHAEL LEMKE, JOEL STARKEY, JOSEPH COWAN, ROBERT HUGHES, CHAD HASEMEYER, JOSHUA SCHOENBECK, DAVID GOMEZ, MICHAEL ATCHISON, RICARDO TEJEDA, and SALVADOR GODINEZ

**Exhibits:**

1. Plaintiff's Amended Complaint
2. Declaration of Salvador Godinez
3. Declaration of David Gomez
4. Deposition of Francisco Romero
5. Administrative Directive 504.660
6. Administrative Directive 5.12.101
7. Menard Administrative Detention Review documents
8. Stateville Administrative Detention Review documents
9. Pontiac Administrative Detention Review documents
10. Deposition of Michael Atchison

1

11. Declaration of Chad Hasemeyer

12. Declaration of Robert Hughes

13. Declaration of Joseph Cowan

14. Declaration of Guy Pierce, Sr.

15. Declaration of Joel Starkey

16. Declaration of Victor Trancoso

17. Commissary records

18. Plaintiff's Grievances

19. Menard Offender Handbook, 2012

20. Pontiac Offender Handbook, 2014

21. Stateville Offender Handbook, 2013

**Facts:**

1. Plaintiff is currently incarcerated in the custody of the Illinois Department of Corrections ("IDOC"). (Ex. 1, ¶ 4.)

2. Defendant Salvador Godinez was the director of IDOC during the time period relevant to Plaintiff's Amended Complaint. (Ex. 2, ¶.)

3. Defendant David Gomez was the deputy director of the Northern District of IDOC during the time period relevant to Plaintiff's Amended Complaint. (Ex. 3.)

4. Defendant Marcus Hardy was the warden of Stateville Correctional Center ("Stateville") when Plaintiff was placed in administrative detention and transferred to Menard Correctional Center ("Menard.") He was the deputy director of the Central District of IDOC in 2014. (Ex. 4, 87:23-88:2.)

5. Administrative detention is a non-disciplinary status of confinement consisting of three

phases which removes an offender from general population or restricts the individual's access to general population. (Ex. 5, IDOC 000064; Ex. 6, IDOC 007773.)

6. Plaintiff was placed in administrative detention based on intelligence that indicated his affiliation with a security threat group, or gang, and an intention to assault staff members in retaliation for an incident with a fellow member of the security threat group. (Ex. 7, IDOC 007749.)

7. When an inmate is placed in administrative detention, his record is reviewed every 90 days to determine whether continued placement is appropriate. (Ex. 5, IDOC 000065; Ex. 6, IDOC 007733.)

8. On Phase I of administrative detention, Plaintiff was given yard time twice a week, was allowed one 15-minute phone call per month, was able to meet with visitors twice a month, and was allowed to shower twice a week. (Ex. 4, 24:8-11; 26-28.)

9. On Phase 2 of administrative detention, Plaintiff went to yard twice a week with other inmates, was allowed two 15-minute phone calls and three visitors per month, and was allowed to shower three times a week. (Ex. 4, 24:8-11; 26-29.)

10. On Phase 3 of administrative detention, Plaintiff was allowed five visits per month and three showers per week. (Ex. 4, 26-30.).

11. While at Menard, religious personnel were allowed to visit Plaintiff and other administrative detention inmates in their cells. (Ex. 4, 22-23.)

12. At Pontiac, Plaintiff was allowed to attend religious services weekly or every other week and participated in a mail correspondence program. (Ex. 4, 21-22.)

13. At Stateville, Plaintiff was offered a life-style redirection class. (Ex. 4, 21:13-16.)

14. Plaintiff was able to access library materials while in administrative detention. (Ex. 4,

114:7-11.)

15. Typically, general population inmates at Menard, Stateville, and Pontiac receive five total hours of yard time per week, five visits per month, and access to religious services according to availability. (Ex. 19, p. 28; Ex. 20, p. 25, 47-48; Ex. 21, p. 28.)

16. Inmates at Menard, Stateville, and Pontiac can make phone calls whenever they have access to a phone, typically during yard. (Ex. 4, 29:12-15; 113:23-114:6.)

17. Inmates at Menard and Stateville can participate in GED and other programs and job details if eligible. (Ex. 4, 181-182, Ex. 19, p. 49-5; Ex. 20, p. 37-39; Ex. 21, p. 38.)

18. Plaintiff's cell at Menard was single occupancy and contained a window that opened to the outside. (Ex. 4, 41:11-13; 67:16-18; 152:10-11; 131:7-9)

19. Plaintiff was allowed to purchase items from commissary while on administrative detention. (Ex. 4, 51:20-52:9; Ex. 17)

Menard Correctional Center

20. On November 1, 2012, Plaintiff was transferred from Stateville to Menard. (Ex. 1, ¶ 8.)

21. Defendant Michael Atchison was the warden of Menard during Plaintiff's incarceration there. (Ex. 10, 6:22-24.)

22. Plaintiff was placed in administrative detention when he arrived at Menard. (Ex. 1, ¶ 8.)

23. Plaintiff's administrative detention status was reviewed on February 1, 2013, while he was on Phase 1. (Ex. 7.)

24. Plaintiff's administrative detention status was reviewed on April 11, 2013, and he was upgraded to Phase 2. (Ex. 7.)

25. Plaintiff's administrative detention status was reviewed on May 1, 2013, and he was upgraded to Phase 3. (Ex. 7.)

26. Plaintiff's administrative detention status was reviewed on August 1, 2013, and he remained in Phase 3. (Ex. 7.)

27. Plaintiff's administrative detention status was reviewed on November 1, 2013, and he remained in Phase 3. (Ex. 7.)

28. Defendant Chad Hasemeyer was a major at Menard during the relevant time period. He was not involved in administrative detention reviews while Plaintiff was incarcerated at Menard and he did not review offender grievances. (Ex. 11.)

29. Defendant Robert Hughes was a major at Menard during the relevant time period. He was not involved in administrative detention reviews while Plaintiff was incarcerated at Menard and he did not review offender grievances. (Ex. 12.)

30. Defendant Joseph Cowan was a major at Menard during the relevant time period. He was not involved in administrative detention reviews while Plaintiff was incarcerated at Menard and he did not review offender grievances. (Ex. 13.)

31. Officer Joshua Schoenbeck worked in internal affairs at Menard during the relevant time period. (Ex. 4, 61:15-18.)

32. Until May 1, 2014, inmates were not required to be interviewed during these reviews. [Ex. 2; Ex. 3]

Stateville Correctional Center

33. On November 12, 2013, Plaintiff was transferred to Stateville Correctional Center. (Ex. 1, ¶ 17.)

34. Michael Lemke was the warden of Stateville when Plaintiff was transferred there. (Ex. 1, ¶ 18.)

35. Plaintiff's administrative detention placement was reviewed on February 12, 2014, and it

5

was recommended he remain in his current Phase of administrative detention. (Ex. 8.)

36. Michael Magana became the warden of Stateville during Plaintiff's incarceration there. (Ex. 1, ¶ 19.)

37. Ricardo Tejeda was an assistant warden of Stateville during Plaintiff's incarceration there. (Ex. 1, ¶ 19.)

Pontiac Correctional Center

38. On April 2, 2014, Plaintiff was transferred to Pontiac Correctional Center ("Pontiac"), where he continued to be in administrative detention. (Ex. 1, ¶ 21.)

39. Defendant Randy Pfister was the warden of Pontiac during the relevant time period. (Ex. 4, 87.)

40. Defendant Guy Pierce, Sr. was the assistant warden of operations at Pontiac during the relevant time period. (Ex. 14.)

41. Defendant Joel Starkey was the facility intelligence coordinator at Pontiac during the relevant time period. He did not review offender grievances as part of his regular job duties. (Ex. 15.)

42. Defendant Victor Trancoso was a major at Pontiac during the relevant time period. He did not review offender grievances as part of his regular job duties. (Ex. 16.)

43. Plaintiff's placement in administrative detention was reviewed on May 12, 2014, and it was recommended he remain in his current level, or phase, of administrative detention for 90 days. (Ex. 9.)

44. After he was removed from disciplinary segregation and investigation, his Phase 3 administrative detention status was reinstated. (Ex. 9.)

45. On August 3, 2014, Plaintiff was given notice of an administrative detention placement

6

review. (Ex. 9.)

46. The notice provided to Plaintiff detailed the justification for Plaintiff's placement, specifically that intelligence indicated Plaintiff was planning to assault staff as retaliation for an alleged assault on a member of the STG with which Plaintiff was affiliated. (Ex. 9.)

47. On August 12, 2014, Assistant Warden Pierce and four other correctional staff members conducted an administrative detention review hearing with Plaintiff present. (Ex. 1, ¶ 28; Ex. 9.)

48. The review hearing resulted in a recommendation that Plaintiff remain in Phase 3 for further observation. (Ex. 9.)

49. Sometime in November 2014, Plaintiff was given notice of an administrative detention placement review to take place on November 13, 2014. (Ex. 9.)

50. Sometime in January 2015, Plaintiff was given notice of an administrative detention placement review. (Ex. 9.) Again, the notice provided to Plaintiff detailed the justification for Plaintiff's placement, specifically that intelligence indicated Plaintiff was planning to assault staff as retaliation for an alleged assault on a member of the STG with which Plaintiff was affiliated. (Ex. 9.)

51. On February 10, 2015, another in-person review of Plaintiff's administrative detention was conducted with Plaintiff present. (Ex. 9.)

52. The review hearing resulted in a recommendation that Plaintiff remain in Phase 3 for further observation. (Ex. 9.)

53. Sometime in April or May 2015, Plaintiff was given notice of an administrative detention placement review. (Ex. 9.) Again, the notice provided to Plaintiff detailed the justification for Plaintiff's placement, specifically intelligence that indicated Plaintiff was planning to

assault staff as retaliation for an alleged assault on a member of the STG with which Plaintiff was affiliated. (Ex. 9.)

54. On May 13, 2015, another review of Plaintiff's administrative detention placement was conducted and it was recommended he remain in his current phase of administrative detention. (Ex. 9.)

55. On August 27, 2015, another in-person review of Plaintiff's administrative detention was conducted with Plaintiff present, and it was recommended Plaintiff remain in his current phase of administrative detention. (Ex. 9.)

56. On November 25, 2015, another review of Plaintiff's administrative detention placement was conducted, and it was recommended Plaintiff remain in his current phase of administrative detention. (Ex. 9.)

57. On February 17, 2016, another in-person review of Plaintiff's administrative detention was conducted with Plaintiff present, and it was recommended Plaintiff remain in his current phase of administrative detention. (Ex. 9.)

58. On May 19, 2016, another review of Plaintiff's administrative detention placement was conducted, and it was recommended Plaintiff be released to general population. (Ex. 9.)

Respectfully Submitted,

LISA MADIGAN
Attorney General of Illinois

/s/ Megan Honingford
MEGAN HONINGFORD
Assistant Attorney General
General Law Bureau
100 W. Randolph, 13th Floor
Chicago, Illinois 60601
(312) 814-2527

8