**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Francisco Romero, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.  15-cv-00713 |
| | ) | |
| Michael Atchison *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Francisco Romero, by his undersigned counsel, submits this memorandum in support of his motion for partial summary judgment (ECF 284).

**INTRODUCTION**

In November 2012, Plaintiff Francisco Romero, who is a prisoner in the Illinois Department of Corrections ("IDOC"), was abruptly removed from general population and placed in administrative detention, or "AD," a form of non-disciplinary solitary confinement.  He spent the next three and a half years in a series of small cells, alone, having virtually no contact with another human being.  And he was never really told why.

From November 1, 2012 and August 12, 2014, the first year and nine months of his solitary confinement, Plaintiff was never told why he had been placed in AD.  He was given no notice explaining why he had been placed in AD, was never informed whether or when his placement in AD would be reviewed, and was, in essence, given no means to understand why he was in solitary confinement, no way to explain why he should not be there, and no way of knowing what he could do to get out.  The Defendants have admitted this, and have explained that during this period IDOC policy did not require the provision of any notice to AD prisoners.

1

In 2014 the IDOC's policies changed to require the provision of notice to prisoners in AD. But for nearly two years thereafter, Plaintiff received an identical, rote notice reciting "recent" intelligence that claimed he had been involved in misconduct. Discovery in this case, however, has revealed that this purported intelligence was two years old. That, too, was effectively useless for Plaintiff. AD is not disciplinary confinement and cannot be used to punish prisoners for past misdeeds. To the contrary, it falls on guards to inform AD prisoners what they can do to change their behavior and get out. The rote repetition of years' old "intelligence" provided no such information, making it impossible for Plaintiff to understand why he was actually in AD and what steps he could take to earn release back into the general population.

These failures violated Plaintiff's due process rights and injured him severely. In his motion, Plaintiff seeks partial summary judgment on the following matters:

- That Plaintiff's confinement in AD from November 1, 2012 and May 1, 2015, during which time he received no notice at all or rote notices, was an "atypical and significant hardship" when compared to "the ordinary incidents of prison life" sufficient to afford Plaintiff due process protection under *Sandin v. Conner*, 515 U.S. 472 (1995).

- That the failure to provide Plaintiff with any notice between November 1, 2012 and August 14, 2014 violated his due process rights under the Fourteenth Amendment.

- That providing Plaintiff with rote notices that reflected years-old intelligence between August 14, 2014 and May 1, 2015 violated Plaintiff's due process rights under the Fourteenth Amendment.

## FACTUAL BACKGROUND

The undisputed facts supporting Plaintiff's motion for partial summary judgment are set forth in Plaintiff's Statement of Undisputed Facts ("SOF") (ECF 285.) In summary, on November 1, 2012, Plaintiff was placed in AD. (SOF ¶ 6.) Though his status in AD appears to have been reviewed multiple times over the subsequent months, he was never provided any notice of these reviews, and no means of preparing or presenting his position to the AD reviewers. (SOF ¶¶ 20-47.)

2

Finally, in August 2014, Plaintiff was provided with his first notice regarding why he had been placed in AD. (SOF ¶¶ 48-49.) That notice cited "recent" intelligence alleging misconduct by Plaintiff—but discovery has revealed that there was no such recent intelligence; to the contrary, the most recent allegations of misconduct by Plaintiff were from December 2012, one and a half years before. (SOF ¶ 49.) Nevertheless, while Plaintiff received notices of his AD reviews going forward, his notices consisted verbatim of the same, rote recitation of "recent" intelligence alleging he had engaged in the exact same misconduct. (SOF ¶¶ 53-60.) During this period, which ran at least through May 1, 2015, there was in fact no such recent intelligence, meaning that Plaintiff was given no information about why he remained in AD and what he could do to earn his way out. (*Id.*)

## LEGAL STANDARD

"Summary judgment is appropriate 'if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.'" *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). The question on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "[A] genuine issue of material fact does not exist unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) (quotation omitted).

Additionally, "motions for partial summary judgment are permitted." *Am. Nurses Ass'n v. Illinois*, 783 F.2d 716, 729 (7th Cir. 1986). Summary judgment can resolve entire claims, or it can resolve "part of . . . [a] claim," Fed. R. Civ. P. 56(a), such that "[a] court may use the summary judgment mechanism to establish certain facts or issues, even if summary judgment is

not rendered on the whole action." *Ames v. The Rock Island Boat Club*, No. 07-cv-4068, 2009 WL 400648, at *2 (C.D. Ill. Feb. 17, 2009). Thus, "'summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense.'" *Ford v. Marion Cty. Sheriff's Office*, 942 F.3d 839, 849 (7th Cir. 2019) (quoting Fed. R. Civ. P. 56(a), cmt. 2010 Amendment). On such a motion for partial summary judgment, "[a] district court also may enter an order stating any material fact that is not genuinely in dispute for trial." *Id.*

## ARGUMENT

Plaintiff asserts that his extended placement in Administrative Detention ("AD") violated his procedural due process rights under the Fourteenth Amendment. It is uncontested that Plaintiff was held in AD in single-cell isolation for a total of 1,284 days, with limited access to phones, visits, and yard time with other inmates. (SOF ¶ 14.) It is likewise uncontested that Plaintiff was held in AD for 640 days without notice as to why he was being held there and without the ability to challenge his placement in AD. (SOF ¶ 48.) Furthermore, once Plaintiff finally did receive notice and an opportunity to be heard, it is uncontested that the justification for his placement, which was based on past conduct, did not change for nearly two years. (SOF ¶ 49.) In light of these uncontested facts, the Defendants violated Plaintiff's due process rights as a matter of law.

"[T]he Fourteenth Amendment provides to inmates a liberty interest in avoiding transfer to more restrictive prison conditions if those conditions result in an 'atypical and significant hardship' when compared to 'the ordinary incidents of prison life.'" *Townsend v. Fuchs*, 522 F.3d 765, 768 (7th Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995). "When a transfer to conditions meeting this standard occurs, the prison must afford the inmate procedural protections before the transfer occurs." *Townsend v. Cooper*, 759 F.3d 678, 685–86 (7th Cir. 2014) (quotation omitted).

Plaintiff's due process claim thus incorporates two basic elements, for which Plaintiff seeks independent partial summary judgment rulings: *first*, that the conditions of confinement that he experienced in AD consisted of an "atypical and significant hardship" sufficient to implicate a liberty interest under *Sandin*; and *second*, that he was subjected to this hardship without the procedural protections afforded by the Due Process clause. Plaintiff's circumstances satisfy both criteria.

### A. Plaintiff was entitled to due process because the conditions of his confinement in AD constituted an "atypical and significant hardship."

A prisoner's liberty interest is invoked when the prisoner is transferred to confinement that places an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484. To determine whether segregation constitutes an atypical and significant hardship, courts look to both "the duration of the segregative confinement" and to "the conditions endured." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). Short terms of segregation require particularly harsh confinement conditions in order to give rise to a prisoner's liberty interest. *Id.* at 697-98. On the other hand, long-term segregation does not require particularly harsh conditions. As the Seventh Circuit explained in *Marion*, "periods of confinement that approach or exceed one year may trigger a cognizable liberty interest without any reference to conditions." *Id.* at 699. *Cf. Harris v. Wall*, No. 14-CV-047, 2015 WL 5009865, at *7 (W.D. Wis. Aug. 20, 2015) ("Although [the prisoner] again does not allege that the conditions of segregation were unusually harsh, the Seventh Circuit has already ruled that . . . 'periods of confinement that approach or exceed one year may trigger a cognizable liberty interest without any reference to conditions'" (quoting *Marion*, 559 F.3d at 697-98)).

Defendants confined Plaintiff in AD for a total of 1295 days. Under *Marion,* the duration of his confinement gives rise to a liberty interest "without any reference to conditions." *Marion*

559 F.3d at 699 (holding confinement in segregation for 240 day was sufficiently prolonged to give rise to a liberty interest). As such, Plaintiff's confinement in AD constituted an atypical and significant hardship sufficient to invoke a liberty interest under the due process clause.

Furthermore, it undisputed—and indeed the Defendants themselves have asserted—that Plaintiff's housing conditions also give rise to a requirement that Plaintiff be given due process. It is uncontested that for the duration of Plaintiff's confinement in AD, Plaintiff was housed in a cell alone where he was isolated from all other human beings; that Plaintiff was permitted out of his cell only a few hours per week, that Plaintiff was permitted only a few short visits behind a glass partition every month, and that Plaintiff was permitted only a few minutes every month to speak with his loved ones (SOF ¶¶ 7-8; 15-17; 26; 31). Otherwise, Plaintiff was entirely alone and was deprived of all human contact, even under the Phase III of AD. (*SOF* ¶ 31.)

This is in contrast with Plaintiff's life in the IDOC's general population, where he was permitted a wide variety of activities, he was able to engage in substantive interactions with other human beings on a daily basis, and he had access to friends and loved ones via the telephone and in-person contact visits. (SOF ¶¶ 2-3.) Given these undisputed conditions, and the undisputed length of Plaintiff's AD confinement, guiding precedent dictates a determination that the conditions of Plaintiff's housing constituted an atypical and significant hardship sufficient to invoke a liberty interest under the due process clause.

Thus, while there remain disputed facts regarding *additional* harsh conditions of Plaintiffs' AD confinement,[1] the *uncontested* facts about Plaintiffs' confinement entitle him to

---

[1] Plaintiff has alleged, and will produce competent evidence to show, that the conditions of his confinement in AD were particularly harsh. The hot water was off in his cell for extended periods of time (Amended Complaint ¶ 42). The AD cells lacked heating, cooling, and ventilation, meaning that Plaintiff was confined to stifling cells that were either unbearably hot or so cold that he could see his breath. (Amended Complaint ¶¶ 42-43,56.) To compound all

summary judgment that his AD confinement was sufficient to require the due process protections set out in *Sandin*.

A. **Plaintiff should receive summary judgment that Defendants did not satisfy the procedural protections afforded by the Due Process clause.**

Once a prisoner establishes that his punishment implicates a liberty interest, the Court determines whether the institution provided the prisoner with "the minimum requirements of procedural due process to be afforded to prisoners in disciplinary proceedings." *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). The Seventh Circuit has delineated these protections precisely:

> Before being deprived of a protected liberty interest, a prisoner is entitled to (1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

*Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). Additionally, reviews that satisfy the criteria set out in *Rasheed-Bey* must be conducted at regular intervals. That is so because where, as here, an "inmate's period of administrative segregation, which [is] not fixed in advance, is an indefinite term, . . . there has to be some mechanism for determining whether change has occurred." *Isby v. Brown*, 856 F.3d 508, 526 (7th Cir. 2017) (bracket and quotation omitted). Even if it is the prison's position that the reason for a prisoner's confinement is ongoing or unchanged, in order to satisfy due process, *that* explanation must be provided to the prisoner. "[I]f the relevant circumstances truly have not changed, that can easily be stated, rather than just relying on a meaningless, repetitive, and rote response." *Isby*, 856 F.3d at 527

---

this, the windows in Plaintiff's cells would not seal or were broken making winter conditions more unbearable. Additionally, Plaintiff's cells were infested with insects and vermin (Amended Complaint. ¶¶ 44,55,60.) He was subject to constant lighting in his cell, inadequate sanitation, mold, and mildew. (Complaint ¶¶ 41,60, 62.)

(quotation omitted). Even "one or two edits or additions" to a prisoner's notice can suffice, but such notice is irreducibly necessary, because it "provide[s] . . . notice to [the prisoner] as to the reasons for his placement and how he could get out." *Id.* This notice requirement goes hand-in-hand with the due process requirement that

> meaningful periodic reviews must include ongoing evaluation of whether an inmate's continued segregation is justified . . . . [I]t [is] insufficient for officials merely to go through the motions of conducting a review when they ha[ve] developed a pre-review conclusion that the inmate would remain in solitary confinement no matter what the evidence show[s].

*Id.* In cases where a prisoner's confinement is sufficiently harsh or sufficiently long to implicate a liberty interest under *Sandin*, these procedural protections are designed to "keep[] administrative segregation from becoming a pretext for indefinite confinement." *Id.* at 525. Under these standards, there can be no genuine dispute of material fact that Plaintiff's due process rights were violated during his confinement in AD.

For Due Process purposes, the period of Plaintiffs' confinement in AD can be measured in two different periods. The first period is the one in which Plaintiff received no due process at all. The second is one in which Plaintiff did not receive meaningful due process.[2] The periods are as follows:

● **No notice period**. November 1, 2012 to August 12, 2014. During this period, Plaintiff was housed in AD with no notice of the charges pursuant to which he was confined to AD or any ability to appear at hearing and challenge the basis for his confinement. (SOF ¶¶ 16-47.). The total time of this period was 1 year, 9 months, 1 week, 4 days, or 649 days.

---

[2] Should this Court find that the periods should be adjudicated as separate and distinct periods of confinement, each one exceeds the one-year period past which, under *Marion*, gives rise to a liberty interest "without any reference to [the] conditions" of confinement at issue. 559 F.3d at 699.

● **Rote notice period**. August 12, 2014 to May 1, 2015. On August 12, 2014, Plaintiff received a hearing after receiving notice on August 3, 2014. After August 12, 2014 Plaintiff received notice in advance of each of his reviews. However, each of the notices contained the same boilerplate information about the charges that had caused Plaintiff to be placed in AD. Each notice and every stated:

> Due to offender Romero's active involvement with the Latin Saints STG and recent intelligence indicating that offender Romero plans to retaliate against staff for assaulting a fellow member of the Latin Saint STG offender Romero has been placed in Administrative Detention for the safety and security of the Department.

(SOF ¶¶ 49, 53, 57.) IDOC records indicate that the last information of any kind that purported to indicate Plaintiff's involvement in an STG or other misconduct was from December 2012. (SOF ¶¶ 18-19.) And there was no new information indicating any potential involvement in an STG or other alleged misconduct until May 2015 (SOF ¶ 19.) To be clear, Plaintiff disputes the veracity of the "confidential source" information in the IDOC's intelligence reports from December 2012 and May 2015. But that is a dispute of fact. This motion concerns the long period when it was undisputed that there were no reports of STG or other threatening activity, from any source—yet Plaintiff received the same, rote charge that "recent" intelligence indicated that Plaintiff was engaged in misconduct.

### 1. Plaintiff's due process rights were violated during the no-notice period.

There can be no dispute that Plaintiff's due process rights were violated during the no-notice period described above, which consisted of 649 days. It is undisputed that during this entire period, Plaintiff was provided with no notice in any form explaining why he had been placed in AD and why that detention was continuing. And he was not provided the ability to appear and challenge the basis for his placement in AD. As such, there is no dispute of material fact regarding the lack of due process for this time period.

The due process protections required by *Sandin* are not taxing for prison officials; they require that "[a]n inmate must merely receive some notice of the charges against him," *Westefer v. Neal*, 682 F.3d 679, 684 (7th Cir. 2012) (Sykes, J.) (quotation omitted), sufficient to "give[] an inmate time 'to prepare for the appearance before the Adjustment Committee.'" *Id.* (quoting *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974)). Indeed as the Supreme Court put it in *Wolff*, "[o]ne of the minimum requirements of due process afforded prisoners facing disciplinary action is advanced written notice of disciplinary charges against them such that they understand the charges they face and may prepare a defense." 418 U.S. at 564. Here, it is undisputed that no notice of any kind was given to Plaintiff for nearly two years. Under established Seventh Circuit precedent, the failure to provide Plaintiff of any notice of the reasons for his placement in solitary confinement or the ability to appear and challenge the basis for his placement violated Plaintiff's rights to procedural due process under the Fourteenth Amendment. *See Dilworth v. Adams*, 841 F.3d 246 (4th Cir. 2016) (remanding for damages where plaintiff was not provided a hearing before he was subjected to punishment in the form of disciplinary segregation).

### 2.     Plaintiff's due process rights were violated during the rote-notice period.

Plaintiff's due process rights were likewise violated during the rote-notice period. During this lengthy period, Plaintiff was provide with the same, rote statement:

> Due to offender Romero's active involvement with the Latin Saints STG and recent intelligence indicating that offender Romero plans to retaliate against staff for assaulting a fellow member of the Latin Saint STG offender Romero has been placed in Administrative Detention for the safety and security of the Department.

(SOF ¶¶ 49, 53, 57.) As *Isby* explained, however, such "rote" notices do not protect a prisoner's liberty interests because they were "limited to occurrences in the past." 856 F.3d at 527. By contrast, "a meaningful review is one that evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to the program, determines

whether that placement remains warranted." *Id.* (quotation and ellipses omitted). Rote, rubber-stamped reviews not only indicate that prison officials are using AD "as a charade in the name of prison security to mask indefinite punishment for past transgressions," *id.* at 529 (quotation omitted), but they certainly fail to "provide [the prisoner with] . . . notice . . . as to the reasons for his placement and how he could get out." *Id.* at 527. The rote notice given to Plaintiff failed these basic requirements, violating Plaintiff's due process rights for an additional, extended period.

*    *    *

In sum, undisputed facts establish that Plaintiff's due process rights were violated during both the no-notice period and the rote-notice period. As such, summary judgement on the lack of due process afforded to Plaintiff's is appropriate for the entire period of incarceration in AD.

## CONCLUSION

For the reasons set forth herein, the Court should grant Plaintiff's motion for partial summary judgment.


Date: October 2, 2020                    Respectfully submitted,

                                         /s/ *Stephen H. Weil*


Jon Loevy – jon@loevy.com              Jennifer Blagg
Stephen H. Weil – weil@loevy.com       Eric Bisby
Loevy & Loevy                          jennifer@blagglaw.net
311 N. Aberdeen Street                 eric@blagglaw.net
Third Floor                            Attorney for Plaintiff
Chicago, IL 60607                      1333 West Devon Ave, Suite 267
312-243-5900                           Chicago Il, 60660
                                       (773) 859-0081

                                       *Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 2, 2020, a true and correct copy of the foregoing was filed electronically.  Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.


<u>/s/ *Stephen H. Weil*</u>