IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Francisco Romero, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-00713 |
| | ) | |
| Michael P. Atchison, Warden of the | ) | Judge Sharon Johnson Coleman |
| Illinois Department of Correction, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Francisco Romero, an inmate in the custody of the Illinois Department of Corrections,

brought this action this 42 U.S.C. § 1983 action against various employees of the Illinois Department of

Corrections ("IDOC"). Romero alleges, among other things, that Defendants violated his due process rights

by placing and keeping him in administrative detention when he was housed at Menard Correctional Center

("Menard"), Stateville Correctional Center ("Stateville"), and Pontiac Correctional Center ("Pontiac"), and

that Defendants retaliated against him for filing grievances. Defendants and Romero filed cross-motions for

summary judgment as to Count I [282, 284]. Defendants also moved for summary judgment on Count VI.

For the reasons stated below, Defendants' motion is granted in part and denied in part. Romero's motion is

denied.

**Background[1]**

On November 1, 2012, Romero was transferred from Stateville to Menard and placed in

administrative detention. "Administrative detention is a non-disciplinary status of confinement consisting of

three phases which removes an offender from general population or restricts the individual's access to general

population." (Defs.' SOF at ¶ 5). According to Defendants, Romero was placed in administrative detention

"based on intelligence that indicated his affiliation with a security threat group, or gang, and an intention to

---

[1] The Court notes that Defendant moves to strike certain paragraphs of Romero's statement of additional facts [309]. This Court declines to strike theses paragraphs but will accord Romero's statements the weight that they deserve.

assault staff members in retaliation for an incident with a fellow member of the security threat group." (*Id.* at ¶ 6). Romero disputes that his continued placement in administrative detention was for this reason.

Romero was upgraded to Phase II on April 11, 2013. On May 1, 2013, Romero was upgraded to Phase III. He remained in Phase III until he was released from administrative detention on May 19, 2016. On November 12, 2013, Romero was then transferred back to Stateville. On April 2, 2014, Romero was transferred to Pontiac, where he continued to be in administrative detention.

During Phase I of administrative detention, which is the most restrictive and lasted four months, Romero was given yard time twice a week without other inmates, was allowed one 15-minute phone call per month, was able to meet with visitors twice a month, and was allowed to shower twice a week. In Phase II, which lasted three months, Romero went to yard twice a week with other inmates, was allowed two 15-minute phone calls and three visitors per month, and was allowed to shower three times a week. In Phase III, Romero was allowed five visits per month and three showers per week. Romero testified that at some point during his confinement at Pontiac he was permitted to attend religious services once a week or every other week. He also testified that he participated in a correspondence mail program. Romero further testified that religious personnel were allowed to visit inmates in their cells. At Stateville, Romero was offered a life-style redirection class. Romero further contends that administrative detention isolated him from virtually all contact with other human beings, even during yard time and eating meals. According to Romero, his meals were given to him through a chuckhole in his cell door. Although Romero was not permitted to go to the library, he could request legal materials. Romero also had some access to commissary, but the maximum allowance and the types of items purchased was often restricted.

General population inmates at Menard, Stateville, and Pontiac receive five total hours of yard time per week, five visits per month, and access to religious services according to availability. General population inmates can also make phone calls whenever they have access to a phone, typically during yard. Inmates at Menard and Stateville can participate in GED and other programs and job details, if eligible. General population inmates do not have commissary restrictions. Romero alleges that when he was in the general population, he was permitted to attend educational courses, use the law library, engage in work programs,

participate in religious services, eat meals, and use phones during yard time—all while being in contact with other inmates and staff regularly.

Romero testified that on December 13, 2012, members of the John Howard Association, an organization that monitors and reports on the conditions inside correctional facilities, visited Menard. During this visit, Romero asked Menard's Warden, Defendant Michael Atchison, questions about his administrative detention. Romero testified that during his conversation with Warden Atchison he inquired about whether the inmates would be told why they were placed in administrative confinement and whether they would receive hearings to present their views. Romero also inquired about whether inmates would receive an orientation manual for administrative detention. According to Romero, Warden Atchison told Romero to shut up and began walking towards his cell gesturing for him to be quiet. Romero alleges that Warden Atchison continued his administrative detention out of retaliation for Romero having inquired about his administrative detention during this conversation.

Romero brought this action alleging that Defendants violated his right to due process based on his confinement in administrative detention. Defendants move for summary judgment on Count I, arguing that Romero's confinement did not trigger a right to due process. Defendants also move for summary judgment on Count VI arguing that Romero cannot show that he was retaliated against when he was placed in administrative detention. Romero moves for partial summary judgment on Count I, arguing that his confinement triggered a right to due process and that Defendants did not satisfy the procedural protections afforded by the Due Process clause.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all

reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Hackett v. City of South Bend*, 956 F.3d 504, 507 (7th Cir. 2020). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**Discussion**

**Count I: Due Process**

The Due Process Clause of the Fourteenth Amendment applies to deprivations of life, liberty, and property. *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). An inmate's constitutional liberty interest extends only to freedoms from deprivations that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In the absence of such "atypical and significant" deprivations, the procedural protections of the Due Process Clause do not apply. *Id.* To determine whether administrative detention constitutes an atypical and significant hardship, courts look to both "the duration of the segregative confinement" and to "the conditions endured." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009).

Here, Romero was in administrative detention for about three and a half years. Specifically, he was confined to Phase I for about four months, during which Romero was given yard time twice a week without other inmates, was allowed one 15-minute phone call per month, was able to meet with visitors twice a month, and was allowed to shower twice a week. Romero testified that initially he was unable to use the phone, but that was revised to a fifteen-minute call per month. In Phase II, which lasted three months, Romero was given yard time twice a week with other inmates, was allowed two 15-minute phone calls and three visitors per month, and was allowed to shower three times a week. Romero also testified that his number of allowed visits in Phase II increased to five. In Phase III, which is the least restrictive and where Romero spent most of his time, he was allowed five visits per month and three showers per week. Romero

4

also testified that he was allowed one call per week during Phase III. Romero further testified that at some

point during his confinement at Pontiac he was permitted to attend religious services once a week or every

other week. He also testified that he participated in a correspondence mail program. Romero testified that

religious personnel were allowed to visit inmates in their cells. Romero was also able to request library

materials while in administrative detention. At Stateville, Romero was also offered a life-style redirection

class. Romero testified that he had some access to commissary, but the maximum allowance and the types of

items purchased was often restricted. Romero testified that he received all his meals in his cell during

administrative detention.

In comparison, general population inmates at Stateville, Pontiac, and Menard "had access to showers

typically twice a week, five visits per month, yard for a total of five hours a week, access to weekly or monthly

religious services subject to the availability of the religious volunteers, and access to work detail and GED

programs." (SOF ¶ 15-17.) Romero also testified that inmates are allowed yard time with more inmates,

provided access to the law library, permitted to use the phone whenever during yard time, and they have cell

mates. Romero testified that inmates in the general population have more movement than inmates in

administrative detention. Inmates also do not have any restrictions on commissary.

Based on these facts, Romero has not shown that his confinement in administrative detention

imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. The

Court further disagrees with Romero's contention that he was deprived of virtually all human contact and

subject to conditions that would trigger a liberty interest. The record clearly shows that is not the case. The

Court acknowledges that the length of time spent in administrative confinement was substantial. However,

after considering the conditions during confinement as compared to those of the general population, the

Court concludes that those restrictions were not significant enough to trigger a liberty interest. While the

restrictions changed over the course of the three phases, it is undisputed that Romero spent the majority of

his time in Phase III—which is the least restrictive of the three phases.

In Romero's response, he also argues that his extended confinement in administrative detention

implicated a liberty interest because the conditions of his cell were abysmal. Specifically, Romero alleges that

he had no hot water in his cell at Menard for eleven months, he was exposed to extreme temperatures during the winter and summer months at Menard and Stateville, his cell was infested with vermin, his toilet at Stateville backed up and flooded his cell twice, and for most of his confinement he had no control over the lights in his cell. Although Romero testified that the cells in general population are different from the cells in administrative detention at Menard, with regard to the temperature, he merely asserts that "[i]t's not as cold[.]" (Defs.' Ex. 4, Romero Dep. at 151). Similarly, he testified that the cells in general population at Stateville do not have windows, so he did not "have to deal with all the cold." (*Id.* at 180). Moreover, as it relates to the other alleged conditions, Romero has not shown that these conditions are atypical and significant as compared to everyday prison life. Accordingly, Defendants' motion for summary judgment on Count I is granted. Romero's motion for partial summary judgment is denied as the Court concludes that he did not have a right to due process.

Because the Court concludes that there is no violation under the Fourteenth Amendment, it does not address the question of whether Defendants provided Romero sufficient due process. The Court also declines to address the question of qualified immunity.

**Count VI: Retaliation**

Defendants also seek summary judgment on Count VI, in which Romero charges that his extended confinement in administrative detention was retaliation for grieving about his administrative confinement. To establish a retaliation claim, a plaintiff must present evidence capable of establishing that: (1) he engaged in activity protected under the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) his First Amendment activity was at least a motivating factor in the defendants' decisions. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Once the plaintiff makes a prima facie showing by establishing these three elements, the burden shifts to the defendants to rebut the causal inference with evidence showing that they would have taken the same action even without any retaliatory motive. *Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013); *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011). If the defendants provide legitimate and non-retaliatory reasons for their actions, then the burden shifts back to the plaintiff to demonstrate that the

proffered reason was pretextual and that the real reason for the action was retaliatory animus. *See, e.g., Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012); *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Zellner*, 639 F.3d at 379.

Initially, Romero appears to abandon Count VI as to Defendants Godinez, Pfister, Pierce, Sr., Trancoso, and Hardy and relies solely on his alleged December 2012 oral grievance to Warden Atchison. Therefore, the Court grants Defendants' motion for summary judgment on Count VI as to Defendants Godinez, Pfister, Pierce, Sr., Trancoso, and Hardy.

Next, the parties do not dispute that filing an oral grievance constitutes protected speech. However, Defendants argue that Romero's speech during the December 2012 incident does not constitute an oral grievance. The Court disagrees as Defendants failed to cite to any authority to support their position. Romero testified that during his conversation with Warden Atchison he inquired about whether the inmates would be told why they were placed in administrative confinement and whether they would receive hearings to present their views. Romero also inquired about whether inmates would receive an orientation manual for administrative detention. It is clear to the Court that Romero's inquiries to Warden Atchison constitutes an oral grievance.

Defendants also argue that even if Romero's speech were an oral grievance, it is not protected under the First Amendment citing to *McElroy v. Lopac*, 403 F.3d 855 (7th Cir. 2005). In *McElroy*, the Court rejected plaintiff's retaliation claim, concluding that his inquiries about pay relating to a prison job failed to meet the public concern test. *Id.* at 858. However, Defendants' argument fails as the Seventh Circuit has held that the public concern test no longer applies to prisoner speech in the present context. *See Bridges*, 557 F.3d at 551 ("[W]e conclude that a prisoner's speech can be protected even when it does not involve a matter of public concern.").

Defendants further argue that Romero cannot satisfy the remaining two elements of his retaliation claim, specifically, that he suffered a deprivation that would deter his protected activity and that the protected activity was at least a motivating factor behind the deprivation. Defendants are incorrect regarding Romero's

burden of proof.  Romero is not required to show that his deprivation deterred his First Amendment activity.

Romero only has to show that the deprivation he suffered would likely deter First Amendment activity—

which is clear here.

Lastly, Defendants argue that Romero's retaliation claim should fail because he cannot show that

Warden Atchison was involved in the process by which Romero's placement in administrative detention was

extended.  The Court disagrees.  Romero has offered his testimony and the sworn testimony of another

inmate to support his claim that his extended confinement in administrative detention was retaliation for

grieving about his administrative confinement to Warden Atchison during the December 2012 incident.

Romero testified that officer Joshua Schoenbeck told him that his administrative detention was being

extended because of Romero's problems with Warden Atchison stemming from the December 2012 incident.

The other inmate's testimony corroborates Romero's testimony.  Romero also testified that officer Joel Shaw

told him that he was in administrative detention because of the December 2012 incident.  Based on this

evidence, a reasonable jury could find that Romero's oral grievance was a reason for Warden Atchison's

decision to extend Romero's administrative detention and that Defendants proffered reason[2] is pretextual.

Accordingly, Defendants' motion for summary judgment on Count VI is denied as to Warden Atchison.

**Conclusion**

For the foregoing reasons, the Defendants' motion for summary judgment [282] is granted as to

Count I and granted in part and denied in part as to Count VI.  Romero's motion for partial summary

judgment on Count I [284] is denied.

**IT IS SO ORDERED.**

Date: 8/6/2021

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

---

[2] Defendants argue that Romero was placed in administrative detention "based on intelligence that indicated his affiliation with a security threat group, or gang, and an intention to assault staff members in retaliation for an incident with a fellow member of the security threat group."  (Defs.' SOF at ¶ 6).